# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Jennifer A.,

        Plaintiff,

v.

Nancy A. Berryhill
Acting Commissioner of
Social Security,

        Defendant.

Civ. No. 18-459 (BRT)

**MEMORANDUM
OPINION AND ORDER**

---

Dana W. Duncan, Esq., Duncan Disability Law, S.C., and Jennifer G. Mrozik, Esq., Hoglund, Chwialkowski & Mrozik, PLLC, counsel for Plaintiff.

Elvi D. Jenkins, Esq., United States Attorney's Office, counsel for Defendant.

---

BECKY R. THORSON, United States Magistrate Judge.

        Pursuant to 42 U.S.C. § 405(g), Plaintiff Jennifer A. seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits. This matter is before the Court on the parties' cross-motions for summary judgment, in accordance with D. Minn. LR 7.2(c)(1). (Doc. Nos. 18, 20.) For the reasons stated below, the Court concludes the Administrative Law Judge's decision is supported by substantial evidence in the record. Therefore, Plaintiff's Motion for Summary Judgment is denied and Defendant's Motion for Summary Judgment is granted.

# BACKGROUND

## I.     Procedural History

On June 11, 2014, Plaintiff filed both a Title II application for disability insurance benefits ("DIB") and a Title XVI application for supplemental security income ("SSI"). (Tr. 41, 308–20.) In both applications, Plaintiff alleged a disability onset date of July 1, 2013. (*Id.*) The Social Security Administration ("SSA") denied her claims initially on February 12, 2015, and upon reconsideration on July 9, 2015. (Tr. 41, 231–35, 240–42, 245–47.) A video hearing was held by an Administrative Law Judge ("ALJ") on April 14, 2017. (Tr. 41, 131–59.) The ALJ issued a decision denying benefits on May 22, 2017. (Tr. 38–55.) The SSA Appeals Council denied Plaintiff's request for review on December 18, 2017, making the ALJ's decision the final decision of the Commissioner. (Tr. 3–6); 20 C.F.R. § 404.981.

On February 16, 2018, Plaintiff timely filed the instant action seeking judicial review pursuant to 42 U.S.C. § 405(g). (Doc. No. 1, Compl.) The parties subsequently filed cross-motions for summary judgment, pursuant to the Local Rules. (Doc. Nos. 18, 20.) Plaintiff argues the ALJ erred by not obtaining a new medical opinion after Plaintiff was hospitalized for depression. (Doc. No. 19, Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Mem.") 7–16.) Plaintiff also argues the ALJ erred in the credibility finding by failing to point out sufficient inconsistencies between the Plaintiff's testimony and the record, and by not conducting a proper assessment of Plaintiff's subjective complaints of pain under SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). (Pl.'s Mem. 16–22.) Defendant argues

that the ALJ properly considered all evidence in the record, including Plaintiff's testimony, and that denial of benefits is supported by substantial evidence. (Doc. No. 20, Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s Mem.") 6–18.)

## II.    Factual Background

Plaintiff was forty-five years old at the time of her alleged onset date of July 1, 2013. (Tr. 54.) She lives in an apartment on her own in Winona. (Tr. 136–37.) She has a high school education as well as college associates degrees in cosmetology and as a medical secretary. (Tr. 139, 621.) Plaintiff has worked in a variety of human resource positions, both for private companies and for the State of Minnesota. (Tr. 141–42.) She has worked approximately fifteen jobs, the longest of which lasted about three years. (Tr. 321, 488, 621.) Plaintiff suffers a variety of conditions, including rheumatoid arthritis, gastro-intestinal disorders, fibromyalgia, depression, and anxiety. (Tr. 43–44, 135.) Due to her conditions, Plaintiff cut down to part-time work in January 2013. (Tr. 135, 580.) She continued to work as a human resource generalist at Watkins, Inc., until she was terminated in July 2013 after using all her medical leave. (Tr. 135.) Plaintiff testified she has not been able to find work since. (Tr. 145.)

Plaintiff reports that she has struggled with depression and anxiety since age thirty, but that it began worsening in 2012. (Tr. 49, 718, 880.) In December 2012, she was diagnosed with anxiety with depression by her primary care physician, Carol Burgmeier, CNP, who continued to treat her. (Tr. 588.) In May 2013, Plaintiff presented for worsening depression, and Nurse Burgmeier increased her Effexor prescription.

3

(Tr. 570). In 2014, Plaintiff presented regularly for depression and also sought counseling from Counseling Associates, LLC. (Tr. 169, 599–608.) In September 2014, Nurse Burgmeier switched Plaintiff from Effexor XR to Remeron for her depression. (Tr. 696.) On October 10, 2014, Plaintiff underwent a psychological examination by Dr. Richard Cocker, who diagnosed her with somatic symptom disorder with comorbid symptoms of depression and anxiety, history of unspecified alcohol-related disorder, and dependent disorder. (Tr. 49, 623–24.) He also assigned her a global assessment of functioning ("GAF") score of 48 in the continuum of mental health illness. (*Id.*) That same month, state agency psychological consultant Ken Lovko, Ph.D, reviewed the record, including Dr. Cocker's report, and recommended a finding of not-disabled. (Tr. 163–94.)

In early 2015, Plaintiff continued to try different medications to manage her depression and anxiety. In January 2015, Nurse Burgmeier increased Plaintiff's Remeron prescription and added Prozac, but Plaintiff remained "angry, frustrated, depressed" and reported finding "no benefit" from them. (Tr. 691, 694, 721.)  In March 2015, Dr. Dare switched Plaintiff's depression medication from Remeron and Prozac to Cymbalta, and her anxiety medication from alprazolam to clonazepam, but things remained "about the same" at her April follow-up.  (Tr. 722, 765.) In May 2015, Plaintiff significantly worsened, and Dr. Dare offered in-patient hospitalization because of her "level of distress and passive death-wish." (Tr. 763.) Dr. Dare observed that her dramatic mood-turn three weeks earlier corresponded to her running out of clonazepam, which he opined "likely had something to do with that." (Tr. 50, 761–63.) Plaintiff was admitted to Generose 3

West on May 30, 2015, for "severe depression in context of active, refractory rheumatoid arthritis." (Tr. 743.) She noted that her depression worsened since she increased the regularity of her cannabis use.[1] (Tr. 751.) After ten days, she was discharged in "improved condition" with no suicidal thoughts. (Tr. 50, 761.)

On June 16, 2015, state agency psychologist Mark Berkowitz, Psy.D., reviewed Plaintiff's file at the reconsideration level and recommended a finding of not-disabled. (Tr. 52, 195–226.) However, his evidence summary indicates that he only considered the record up through Dr. Cocker's examination in October 2014. (Tr. 207, 223.)

Plaintiff continued to present for depression medication management for the remainder of 2015 and throughout 2016. (Tr. 932, 786, 791, 795, 799, 803, 807, 827, 845, 959, 871, 880, 892.) Her mood fluctuated during this time, ranging from "progressively worsening" to "[n]ot much has changed" and "somewhat better." (Tr. 791, 807, 982.) Her "passive suicidal ideation" was reported returning on two occasions. (Tr. 830, 871.)

## III.    The ALJ's Findings and Decision

In his decision dated May 22, 2017, the ALJ denied Plaintiff's applications for DIB and SSI, finding Plaintiff not disabled under the Social Security Act. (Tr. 42.) The ALJ proceeded through the five-step evaluation process provided in the social security

---

[1]    As of her March 10, 2015, appointment with Dr. Dare, Plaintiff denied present use of marijuana. (Tr. 719.) She later reported smoking marijuana up to five times per day prior to her hospitalization. (Tr. 791.) She also has a stated history of cannabis use disorder. (Tr. 827, 892.)

regulations. *See* 20 C.F.R. § 404.1520(a)(4). These steps require an ALJ to determine (1) whether the claimant is presently engaged in "substantial gainful activity"; (2) whether the claimant is severely impaired; (3) whether the claimant's impairment meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant can perform past relevant work; and (5) whether the claimant can perform any other job with sufficient numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v).

At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since July 1, 2013, the alleged onset date. (Tr. 43.) At step two, the ALJ determined that Plaintiff had the following severe impairments: rheumatoid arthritis, depression, anxiety, personality disorders, disorders of the gastrointestinal system, and asthma. (*Id.*) She also has the following non-severe impairments: cannabis use disorder, degenerative disc disease, headaches, somatic symptom disorder, and fibromyalgia. (Tr. 44.)

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) When examining Plaintiff's physical impairments, the ALJ specifically considered listings 3.03 (asthma), 5.06 (inflammatory bowel disease), and 14.09 (inflammatory arthritis). (*Id.*) The ALJ found the evidence did not meet the criteria of the above listings. (*Id.*) When examining Plaintiff's cognitive impairments, the ALJ specifically reviewed listings 12.04

(depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.08 (personality and impulse-control disorders). (*Id.*) The ALJ explained that in order to meet the "paragraph B" criteria, a claimant must have mental impairments resulting in at least one extreme or two marked limitations in the following areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself, pursuant to 20 C.F.R. § 1520a. (Tr. 44–45.) The ALJ found that Plaintiff had only "moderate" limitations in each of these areas. (Tr. 45.)

Specifically, as to the first category—understanding, remembering, or applying information—the ALJ noted that Plaintiff has average intelligence, and while she has an anxious and depressed mood, her thought process was consistently linear and goal directed, and her cognition and memory were grossly intact. (Tr. 45, 762–63, 765–66, 788–89, 797, 801, 805, 808, 830, 847, 874, 895.) Although Plaintiff testified that her short-term memory is "horrible," the ALJ found this side effect to be less severe than alleged because there is no record of Plaintiff addressing this concern with any medical provider. (Tr. 45.)

As to the second category—interacting with others—the ALJ considered Plaintiff's testimony that she has a boyfriend and friends. (Tr. 45.) The ALJ acknowledged there is "some evidence" that Plaintiff has interpersonal conflicts with some family members, but also noted that Plaintiff nevertheless attends medical appointments without incident and is often described as cooperative and/or pleasant by

medical providers. (*Id.*) There also is no evidence of assaultive behavior, violent outbursts, or aggression. (*Id.*)

As to the third category—concentrating, persisting, or maintaining pace—the ALJ considered Plaintiff's testimony of having difficulty in concentrating. Against this, he considered the fact that she lives alone and drives. (Tr. 45, 137–39.) He also noted that despite an anxious and depressed mood, Plaintiff was consistently appropriately groomed; her thought process was linear and goal-directed; her cognition was grossly intact; and she was able to engage in appropriate conversation at appointments. (Tr. 45, 762–63, 765–66, 788–89, 797, 801, 805, 808, 830, 847, 874, 895.)

As to the fourth category—adapting or managing oneself—the ALJ considered that Plaintiff has "some difficulty" regulating her emotions, but noted that she has not "required or received intensive outpatient mental health services," and that "there is no evidence of assaultive behavior, violent outburst, or aggression." (Tr. 45.)

Since Plaintiff only reached the level of "moderate" limitations in each of these categories, the ALJ found that Plaintiff's impairments do meet or equal a listing.[2] (Tr. 45.)

---

[2]     The ALJ also found that Plaintiff's impairments did not meet or equal the "paragraph C" criteria. (Tr. 45.)

Before moving on to step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform "light work," as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b), with the following limitations:

> She can frequently reach overhead to the right; frequently handle and finger bilaterally; occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; occasionally work at unprotected heights and near moving mechanical parts; never engage in commercial driving; can no more than frequently tolerate humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, and extreme heat; can perform simple, routine tasks; can have occasional interactions with supervisors, co-workers and the public; and she requires the use of a cane for ambulation.

(Tr. 46.)

When determining Plaintiff's RFC, the ALJ analyzed Plaintiff's symptoms using a two-step process, in which an ALJ determines (1) whether a claimant's physical or mental impairment(s) could reasonably be expected to produce the symptoms, and (2) to what extent they limit the claimant's functioning. (Tr. 46.) The ALJ found Plaintiff's medically determinable impairments could "reasonably be expected to cause the alleged symptoms," but that Plaintiff's statements about the "intensity, persistence and limiting effects" of her symptoms were not "entirely consistent with the medical evidence and other evidence in the record." (Tr. 47.)

In making this determination, the ALJ gave "considerable weight" to the opinions of state agency medical consultants Charles Grant, M.D., and Kimberlee Terry, M.D., as to Plaintiff's physical capabilities. (Tr. 52.) The ALJ found their opinions "generally

consistent with the record as a whole[,] including objective medical evidence and clinical findings on examination." (*Id.*)

The ALJ also relied on the opinions of state agency psychological consultants. He gave "great weight" to the opinion of Dr. Ken Lovko and "less weight" to Dr. Mark Berkowitz. (Tr. 52.) Dr. Lovko reviewed Plaintiff's case file on October 27, 2014. (*Id.*) He opined that Plaintiff can "understand, remember, and carry-out unskilled tasks without special considerations in many work environments." (*Id.*) He also stated that Plaintiff can "relate on at least a superficial and ongoing basis" with co-workers and supervisors, "attend to tasks for sufficient periods of time" to complete them, and "manage the stresses involved with unskilled work." (Tr. 52, 163–94.) The ALJ found Dr. Lovko's opinion to be "generally consistent with the clinical findings on examination and course of treatment" and gave it great weight. (Tr. 52.)

Dr. Mark Berkowitz reviewed Plaintiff's case file on June 16, 2015. (*Id.*) He expressed that Plaintiff can "understand, remember, and carryout lower level moderately complex tasks without special considerations in many work environments." (*Id.*) He also opined that Plaintiff "can generally relate" with co-workers and supervisors, although "her history of being in abusive relationships suggests contact with others should not be a major job focus." (Tr. 52, 195–226.) The ALJ gave less weight to Dr. Berkowitz's opinion because the terms "moderately" and "major job focus" were imprecise. (*Id.*)

The ALJ also gave "little weight" to a letter submitted on February 24, 2015, by Carol Burgmeier, FNP, Plaintiff's primary care provider, because Nurse Burgmeier

mostly "recited what the claimant told her about her activities of daily living and inability to work." (Tr. 52; 707–08.) The ALJ gave "little weight" to a letter submitted on February 25, 2015 by Dr. John Davis, III, Plaintiff's rheumatologist, because the letter was "conclusory" about Plaintiff's ability and because the final determinations about disability are "reserved to the Commissioner." (Tr. 53, 709.) The ALJ likewise gave "little weight" to a "Verification of Disability" form prepared by Dr. Davis for Plaintiff's housing application because the disability determination involves "different rules and standards." (Tr. 53, 1009–12.)

The ALJ gave "some weight" to the opinion of Richard Cocker, M.S., who opined that the claimant had lost the ability to continue working a year ago due to "lack of sleep, ability to concentrate, and to keep up." (Tr. 49, 623.) Dr. Cocker noted that Plaintiff has reported these difficulties in her daily activities and spends a large majority of her time in bed and opined that stress and pressure would "greatly aggravate" her medical symptoms and ability to work. (*Id.*) However, Dr. Cocker also noted that there was no indication of impairment in her ability to relate to others. (*Id.*) He diagnosed Plaintiff with somatic symptom disorder, amongst other things, and assigned a GAF score of 48. (Tr. 49, 624.) The ALJ gave limited weight to Dr. Cocker's opinion because his opinion tended to recite what Plaintiff had told him and because the somatic symptom disorder diagnosis appeared nowhere else in the case file. (Tr. 49.)

According to the ALJ, the RFC is supported by the "objective medical record, the clinical findings on examination, the treatment records discussed . . ., the lack of treatment sought or pursued by the claimant, and the consultant opinions." (*Id.*)

Continuing to step four, the ALJ found that Plaintiff is unable to perform any of her past relevant work as a human resource generalist, human resource benefit specialist, and human resource assistant. (Tr. 53.) Finally, at step five the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 54.) Relying on the testimony of a vocational expert, the ALJ found that Plaintiff could perform the work of a general office clerk, inspector tester sorter, and production worker or helper. (*Id.*). Therefore, the ALJ concluded that Plaintiff is not disabled under the Social Security Act. (Tr. 55.)

## DISCUSSION

### I.     Standard of Review

Congress has established the standards by which social security disability insurance benefits may be awarded. The SSA must find a claimant disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairments must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that she is entitled to disability insurance benefits under the Social Security Act. *See* 20 C.F.R. § 404.1512(a). Once the claimant has demonstrated that he cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the [RFC] to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citations omitted).

The Court has the authority to review the Commissioner's final decision denying disability benefits to Plaintiff. 42 U.S.C. § 405(g); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). If the Commissioner's decision is supported by substantial evidence in the record as a whole, then the decision will be upheld. 42 U.S.C. § 405(g); *Kluesner*, 607 F.3d at 536 (citations omitted). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994). The Court thus considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner*, 607 F.3d at 536.

If, after review, the record as a whole supports the Commissioner's findings, the Commissioner's decision must be upheld, even if the record also supports the opposite conclusion. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Goff v. Barnhart* 421 F.3d 785, 789 (8th Cir. 2005). The whole record is considered, including "evidence that supports as well as detracts from the Commissioner's decision," and the Court will not reverse simply because some evidence may support the opposite conclusion. *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006). If it is "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings," the Commissioner's decision must be affirmed. *Pearsall v. Massanarri*, 274 F.3d 1211, 1217 (8th Cir. 2001).

## II.      Analysis of the ALJ's Decision

Plaintiff raises two arguments on appeal. First, Plaintiff claims that the ALJ failed to develop the record in light of "new and substantial evidence." (Pl.'s Mem. 7.) Specifically, Plaintiff argues that her in-patient hospitalization for depression in May 2015 required a new medical opinion because the state agency psychological experts, on whom the ALJ heavily relied, only considered mental records up through October 10, 2014, when Dr. Cocker performed a psychological evaluation. (*Id.* at 9.) Therefore, any changes after that point were not reviewed by a medical expert. (*Id.*) Instead of seeking a new opinion, Plaintiff asserts, the ALJ inappropriately "played doctor" by relying on his "own, independent findings" and the "outdated medical opinion[s]" of Dr. Lovko and Dr. Berkowitz. (*Id.*) Second, Plaintiff argues that the ALJ provided a "flawed credibility

finding" by failing to point out specific inconsistencies between Plaintiff's testimony and the record, and by neglecting to undertake step two of the required analysis for subjective complaints of pain, pursuant to SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

The Commissioner maintains that the ALJ was not required to seek a new medical opinion because he had sufficient medical evidence to make a decision. The Commissioner also argues that the ALJ performed a proper credibility assessment.

The Court affirms the ALJ's decision for the following reasons.

**A.     The ALJ was not required to obtain a new medical opinion in light of Plaintiff's hospitalization for depression.**

"Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (quoting *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)). A record is fully developed when it contains enough information to determine whether a disability exists. 20 C.F.R. § 416.912(a)(2) ("The evidence in your case record must be complete and detailed enough to allow us to make a determination or decision about whether you are disabled or blind."); 20 C.F.R. § 404.1520b(b) ("We consider evidence to be insufficient when it does not contain all the information we need to make our determination or decision."). When the evidence in the record is incomplete or inconsistent, an ALJ may choose to seek additional information from various sources, including seeking clarifications from a treating physician or ordering a consultative examination. 20 C.F.R. § 404.1520b(b).

15

A developed record must include evidence from a treating physician or at least an examining physician "addressing the particular impairments at issue." *Strongson v. Barnhart*, 361 F.3d 1066, 1071–72 (8th Cir. 2004). Even where there is evidence from a treating or examining physician in the record, an ALJ may be required to seek an updated medical opinion at times, as when a "crucial issue is undeveloped," *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (citation omitted), when "necessary for [the ALJ] to make an informed decision," *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir. 1992) (quoting *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985)), or when additional evidence is received that the ALJ believes "may change the state agency medical or psychological consultant's finding" at step three. SSR 96-6p, 1996 WL 374180, at *4 (July 2, 1996). Seeking an updated medical opinion may involve asking an examining physician to clarify their opinion or ordering a consultative examination. *See Stormo*, 377 F.3d at 806–07 (finding no duty to seek clarifying statements from physicians); *Boyd*, 960 F.2d at 736 (finding error under the circumstances when the ALJ failed to order a consultative examination).

An ALJ's duty to develop the record is not "never-ending." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). An ALJ is required to seek a new medical opinion or clarification "only if the available evidence does not provide an adequate basis for determining the merits of the disability claim." *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004). Where other evidence provides a "sufficient basis" for making a decision, the ALJ need not seek additional medical evidence. *Warburton v. Apfel*, 188 F.3d 1047,

16

1051 (8th Cir. 1999) (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)). Reviewing courts typically defer to the judgment of an ALJ as to when the record is fully developed. *Filipi v. Shalala*, No. 3-93-785, 1994 WL 706692, at *4 (D. Minn. Sept. 30, 1994) (citing *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994)).

In the present case, there was no duty for the ALJ to order a new consultative examination. First, there was no crucial issue undeveloped in the record. Second, the ALJ was entitled to rely on the opinions of Dr. Lovko and Dr. Berkowitz, the state agency psychological consultants. And third, the ALJ conducted a proper administrative review of the record and did not engage in unlawful medical judgment.

### 1. There was no crucial issue undeveloped in the record.

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (citation omitted). This medical evidence must include "evidence from a treating physician, or at least an examining physician," in relation to the impairment in question. *Strongson*, 361 F.3d at 1071–72 (8th Cir. 2004) (citation omitted). Here, there was no crucial issue undeveloped because the ALJ considered the entire record, which included evidence from Plaintiff's treating providers both before and after her hospitalization, and made his determination with the support of sufficient medical evidence.

The ALJ had access to the entire record and carefully reviewed it. (Tr. 43.) There is no allegation that the ALJ failed to review any of the submitted evidence or that any

period of time went unconsidered. *See Cox. v. Apfel*, 160 F.3d 1203, 1209 (8th Cir. 1998) (finding error where the ALJ failed to gather seventeen months of medical records relating to the claimant's pain management). After reviewing the record, the ALJ found that it supported the "residual capacity assessment," and that Plaintiff's alleged limitations were "not fully persuasive." (Tr. 53.)

In making his determinations, the ALJ had the support of medical evidence from a treating or examining physician. The record contains evidence from Nurse Burgmeier, Dr. Cocker, and Dr. Dare pre-dating Plaintiff's hospitalization. Plaintiff began visiting Nurse Burgmeier for her depression as early as 2012, made repeated visits throughout 2013, 2014, and 2015, was diagnosed with major depressive disorder, and was trying out different medications. (Tr. 588, 569, 556, 552, 698, 696, 698, 691.) In October 2014, Dr. Cocker examined Plaintiff, considered her testimony about her difficulties in daily living, and diagnosed her with somatic symptom disorder and dependent personality disorder. (Tr. 622–23.) And in March, April, and May 2015, Plaintiff also visited Dr. Dare for treatment of her depression. (Tr. 718, 765, 761.) After her hospital discharge, Plaintiff continued to see Nurse Burgmeier. (Tr. 932, 959.) Plaintiff also began regularly treating with Dr. Eva Bieber, who managed Plaintiff's depression medication. (Tr. 786, 795, 799.) The ALJ considered the findings of all these providers. (Tr. 48–50.)

The ALJ also had support from the medical records showing Plaintiff's course of treatment. These records showed that she was hospitalized for depression in 2015, but the ALJ also observed that Plaintiff has not required "intensive outpatient mental health

services." (Tr. 51.) Indeed, the record shows that Plaintiff's status remained relatively constant. She maintained regular monthly visits to follow-up on her depression medication management and attended therapy, but she did not have further instances of rapid decline. (Tr. 743, 932, 788, 791, 795, 799, 803, 807, 827, 845, 959, 871, 880, 892.) Her passive death-wish was reported returning at two follow-up visits and was gone by the next regular check-up in the record. (Tr. 830, 845, 871, 895.)

The ALJ further relied on the clinical findings of Plaintiff's providers throughout her course of treatment. Despite her hospitalization, Plaintiff's providers consistently found her to have appropriate grooming, linear and goal-directed thought processes, grossly intact cognition, and ability to engage in appropriate conversation. (Tr. 45, 762–63, 766–67, 788–89, 797, 801, 805, 830, 847, 874, 895.) They also found her to have "average" intelligence. (Tr. 808.) The ALJ cited these findings in his determination that Plaintiff had no more than "moderate" mental impairments in the "paragraph B" criteria. (Tr. 45.)

In addition to evidence from Plaintiff's treating providers, course of treatment, and clinical findings, the ALJ was also able to consider the opinions of the state agency psychological consultants, Dr. Lovko and Dr. Berkowitz. Reviewing opinions are not usually "substantial evidence on the record as a whole." *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003). Nevertheless, state agency consultants are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act," whom an ALJ is required to consider. SSR 96-6p, 1996

19

WL 374180, at *2 (July 2, 1996). Further, "[i]t is well settled that an ALJ may consider the opinion of an independent medical advisor as one factor in determining the nature and severity of a claimant's impairment." *Harris v. Barnhart*, 356 F.3d 926, 931 (8th Cir. 2004).

Although they lacked access to some of Plaintiff's subsequent records, Dr. Lovko and Dr. Berkowitz were able to consider Plaintiff's mental condition after she had begun regularly treating for depression. Their reports specifically reference Plaintiff's diagnosis with major depressive disorder in 2014 and the clinical findings of Dr. Cocker, as stated above. (Tr. 169, 207.)

Dr. Lovko opined that Plaintiff could "understand, remember, and carry-out unskilled tasks without special consideration in many work environments; can relate on at least a superficial and ongoing basis with co-workers and supervisors; can attend to tasks for sufficient periods of time to complete tasks; and she can manage the stresses involved with unskilled work." (Tr. 52, 176.) He found that Plaintiff had no more than moderate limitations in the "paragraph B" categories and no episodes of decompensation. (Tr. 171, 173–74.) As referenced above, the ALJ gave "great weight" to Dr. Lovko's opinion because he found it "generally consistent" with the clinical findings and Plaintiff's course of treatment. (Tr. 52.)

Dr. Berkowitz opined that the Plaintiff could "understand, remember, and carry out lower level moderately complex tasks without special considerations in many work environments; and she can generally relate with co-workers and supervisors although her

history of being in abusive relationships suggests contact with others should not be a major job focus." (Tr. 52, 207.) He, too, found Plaintiff to have no more than moderate limitations in the "paragraph B" categories and no episodes of decompensation. (Tr. 201, 205–06.) The ALJ gave Dr. Berkowitz's opinion "less weight" because the terms "moderately" and "major job focus" were imprecise.

Relying on their opinions and the record as a whole, the ALJ limited Plaintiff's RFC to "simple, routine tasks" with "occasional interactions with supervisors, co-workers, and the public," and found her "not disabled" under the Act. (Tr. 46.) Although the state agency consultants had not considered the entire record, the ALJ himself considered the entire record and made an administrative determination. The ALJ was obligated to seek an "updated medical opinion" only if, in his opinion, the additional evidence may have changed their opinions. SSR 96-6p, 1996 WL 374180, at *3–4 (July 2, 1996). But here, there was no "crucial issue" left undeveloped because he had medical evidence from treating providers during and after Plaintiff's hospitalization. Therefore, he was under no obligation to seek a new opinion. *See Warburton*, 188 F.3d at 1051; *see also Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001) (finding the ALJ was not required to order a consultative examination where there was substantial evidence in the record that allowed the ALJ to make an informed decision); *Knavel v. Astrue*, No. 07–03170–CV–S–NKL, 2008 WL 2952205, at *4 (W.D. Mo. July 28, 2008) (same); *Boitel v. Astrue*, No. 4:08cv00548 JWC, 2009 WL 3063365, at *5 (E.D. Ark. September 22, 2009) (same).

2.  *The ALJ was entitled to rely on the opinions of Dr. Lovko and Dr. Berkowitz.*

Despite Plaintiff's characterization of the state agency psychologists' opinions as "outdated," the ALJ was entitled to rely on them. (Pl.'s Mem. 9.) The Eighth Circuit has made it clear in *Hacker v. Barnhart*, 459 F.3d 934, 939 (8th Cir. 2006) that subsequent evidence does not automatically invalidate a prior medical opinion. So long as the ALJ reasonably finds the medical opinion to be consistent with the subsequent evidence, the ALJ is permitted to rely on it. *Id.*[3]

In *Hacker*, the ALJ relied on the opinions of two non-examining, reviewing psychologists to develop the claimant's RFC and to find that the claimant was not disabled. *Id.* The claimant challenged the ALJ's reliance on these opinions because they "pre-dated a considerable amount of medical evidence" relating to an increase in the claimant's depressive symptoms. *Id.* Nevertheless, the Eighth Circuit upheld the ALJ's decision because the increase was "relatively minor," and it was a "reasonable judgment" for the ALJ to find that the opinions were consistent with the subsequent evidence. *Id.* The court found the decline to be "minor" because the claimant only saw her treating four

---

[3]     *But see Nevland v. Apfel*, 204 F.3d 853 (8th Cir. 2000) (holding that the ALJ erred by relying solely on the opinion of a non-treating, non-examining physician instead of seeking opinions from the treating physicians or, alternatively, ordering a consultative examination); *Thesing v. Colvin*, Civ. No. 13-1079 JRT/JSM, 2014 WL 3890372, at *25 (D. Minn. Aug. 8, 2014) (not reported) (finding the ALJ improperly relied on a non-examining consultant for the mental RFC where the consultant's review lacked eighteen months of records, including assessments from the claimant' treating providers).

times in late 2003 about her worsening depression. *Id.* On the third of these visits, the

physician found her functional impairment to be only "moderate," and on the fourth visit

he told her not to come back for a month. *Id.*

Similarly here, Plaintiff challenges the ALJ's decision because part of her

treatment records, including her hospitalization, went unconsidered by the state agency

psychological consultants. Nevertheless, as in the *Hacker* case, the ALJ appropriately

weighed their opinions because they were consistent with the subsequent evidence.

Although Plaintiff had never been hospitalized for depression before, several

factors weaken its significance. First, while there is some evidence that Plaintiff's

depression was worsening in early 2015 as she tried out various medications for her

depression (Tr. 719, 765), her hospitalization itself was likely the result of her running

out her medication. (Tr. 761, 763 (showing notes by Dr. Dare after her May 27, 2015

visit that Plaintiff had run out of clonazepam for her anxiety about three weeks ago, the

same time that Plaintiff's mood "seemed to change so dramatically," and opining that the

lack of medication "likely had something to do with [her hospitalization].").)

"Impairments that are controllable or amenable to treatment do not support a finding of

disability." *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009). This holds even where

symptoms periodically worsen and require adjustments in medication. *Id.* After being

hospitalized for over a week, Plaintiff was released in a much better condition. Her

symptoms had "improved greatly," she had a "euthymic" mood, and she had denied

suicidal thoughts for several days. (Tr. 50, 744, 746.) Thus, Plaintiff's hospitalization did not necessarily indicate a change in her overall condition.

This was also consistent with Plaintiff's ongoing care. The ALJ observed that Plaintiff "has not required or received intensive outpatient mental health services." (Tr. 51.) She kept up her monthly visits to providers to manage her depression medication, and she attended therapy, but she did not have any similar declines. (Tr. 799.)

Plaintiff's subsequent treatment further shows relative stability in her condition. She continued to struggle with a depressed mood, which went through various swings. (Tr. 791, 845, 871, 892.) But, she was consistently able to engage appropriately with her providers, who described her as appropriately groomed and as having clear speech, linear and goal-directed thought processes, grossly intact cognition and memory, and appropriate conversation skills. (Tr. 762–63, 766–67, 788–89, 797, 801, 805, 830, 847, 874, 895.) She also was recorded as endorsing a passive death-wish on two of her visits after her discharge, but in each case it was gone by the next regular follow-up in the record. (Tr. 830, 847, 871, 895.) These treatment notes show that Plaintiff continued to struggle with depression, but do not indicate a substantial change from the condition and symptoms which the state agency psychologists were able to consider, nor from the opinions they gave.

When there is "additional evidence" submitted that a state agency medical or psychological consultant did not have opportunity to review, the ALJ is only required to

seek an "updated medical opinion from a medical expert" if, "*in the opinion of the administrative law judge*," the evidence may change the consultant's finding. SSR 96-6p, 1996 WL 374180, at *9–10 (July 2, 1996). Here, the ALJ considered the post-hospitalization treatment notes and stated that Dr. Lovko's opinion was "generally consistent with the clinical findings on examination and course of treatment." (Tr. 52.) Therefore, the ALJ was not required to seek an updated medical opinion.

### 3. *The ALJ did not insert his own medical opinion.*

Medical opinions are statements that "reflect judgments about the nature and severity of [a claimant's] impairment(s)," including the claimant's "symptoms, diagnosis and prognosis," what the claimant "can still do despite impairment(s)," and the claimant's "physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). When evaluating the record, an ALJ may not "simply draw his own inferences about plaintiff's functional ability from medical reports." *Id.* at 1070. Neither may he "substitute his opinions for those of the physician." *Finch v. Astrue*, 564 F.3d 933, 938 (8th Cir. 2008) (citation omitted). To do so constitutes unlawfully "playing doctor." *Pate-Fires v. Astrue*, 564 F.3d 935, 946–47 (8th Cir. 2009).

Instead, it is the role of the ALJ to determine the individual's RFC and, in light of that RFC, to determine whether an individual is disabled. 20 C.F.R. § 404.1527(d); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996). In making these determinations, the ALJ is required to consider the entire record. 20 C.F.R. § 404.1520(a)(3). When deciding what weight to give to testimony, the ALJ is specifically authorized to consider its consistency

with the record as a whole. *See* 20 C.F.R. §§ 416.1527(c)(4) (expert testimony), 404.1529(a) (subjective testimony). ALJs commonly rely on medical notations in the record when evaluating consistency between the record and testimony. *See, e.g.*, *Hacker*, 459 F.3d at 939 (finding a medical provider's notes that a claimant's impairment was moderate and telling her not to return for a month were consistent with a prior expert opinion); *Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010) (finding the claimant's subjective complaints were contradicted by medical notations that she "repeatedly appeared alert and oriented with normal speech and thought processes," and "behaved appropriately in her interactions with others").

Plaintiff argues it was inappropriate for the ALJ to rely on particular medical notations in the record to discount the significance of Plaintiff's hospitalization. (Pl.'s Mem. 15.) In particular, Plaintiff points to a section int eh ALJ's decision wherein he states the following:

> I find the clinical assessments/mental status examinations and course of treatment in this case are not consistent with disabling mental impairment and are more consistent with the stated residual functional capacity. During the relevant timeframe, the claimant was psychiatrically hospitalized once, but she has not required or received intensive outpatient mental health services. Despite an anxious and depressed mood, the claimant is consistently appropriately groomed; her speech is clear; her thought process is linear and goal directed; cognition and memory are grossly intact; and she is able to follow and engage in appropriate conversation.

(Tr. 51–52.) The ALJ then cites the records from eleven office visits in 2015 and 2016 in which Plaintiff's treating providers make these observations about Plaintiff's grooming, mood, and cognition. (Tr. 762–63, 766–67, 788–89, 797, 801, 805, 830, 847, 874, 895.)

Plaintiff compares the ALJ's reasoning to that in *Combs v. Berryhill*, 878 F.3d 642 (8th Cir. 2017), where the Eighth Circuit found the ALJ improperly relied "on his own inferences" as to the significance of specific treatment notes in the record. *Id.* at 647.

*Combs*, however, is distinguishable. In *Combs*, the ALJ was faced with conflicting opinions from two non-examining medical consultants. Dr. Redd opined that the claimant could "lift ten pounds occasionally and less than ten pounds frequently and was therefore limited to sedentary work." *Id.* at 644-45. Dr. Keith opined that the claimant "was capable of work at the light exertional level and could lift twenty pounds occasionally and ten pounds frequently." *Id.* at 645. The ALJ in *Combs* gave greater weight to Dr. Keith's opinion because he considered it to be more consistent with notations in the record that the claimant was in "no acute distress" and "had normal movement of all extremities." *Id.*

In *Combs*, the ALJ erred not because he considered the relevance of treatment notations, but because the notations *were ambiguous for the purpose for which the ALJ applied them*. The ALJ used general statements to determine a precise physical limitation in the claimant's RFC over which equally reliable experts were divided. There was no way for the ALJ to know whether "normal movement" and "no acute distress" was more consistent with a ten-pound weight restriction than a twenty-pound weight restriction based on those notes without exercising medical judgment. *Combs*, 878 F.3d at 647.

By contrast, the ALJ in the present case put the unambiguous notations to a reasonable use. *See*, *Hacker*, 459 F.3d at 939. The ALJ relied not on two individual

notations but the consistent observations of multiple providers over a period of twenty months. He used these notes to support his finding that Plaintiff has cognitive and social abilities in line with the RFC rather than a disabling impairment. Unlike *Combs*, the ALJ did not use these notations to determine a specific restriction in the RFC to which they were ambiguous. It would have been inappropriate, for instance, for the ALJ to use a provider's observation that Plaintiff's mood is "euthymic" to determine how many hours a day Plaintiff could interact with co-workers and supervisors in the workplace, where one expert opined four hours and another expert opined eight, because this would have required a specific medical judgment. Instead, the ALJ used the records to make an administrative assessment, which the ALJ is allowed to do. *See* SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996) (explaining the difference between administrative findings and medical opinions). The second requires a specific medical judgment that an ALJ is not permitted to do.

Therefore, based on all of the above, the Court finds that the ALJ did not err in not seeking a new medical opinion. It was reasonable for the ALJ to find, upon review of the entire record evidence, that Plaintiff's hospitalization did not change her overall condition so as to require a new mental evaluation. It was also reasonable to find that Plaintiff's treatment in 2015 and 2016 was consistent with her RFC. The ALJ properly weighed the expert opinions of Dr. Lovko and Dr. Berkowitz, Plaintiff's subjective testimony, Plaintiff's course of treatment, and the clinical findings in the record treatment, and then, after consideration of the vocational expert's testimony, to define her abilities according

to the limitations provided in the RFC and find her not disabled. These judgments were within the ALJ's "zone of choice," which this Court will not disturb. *Culbertson*, 30 F.3d at 939 (8th Cir. 1994).

### B.      The ALJ properly evaluated Plaintiff's credibility.

Plaintiff also challenges the ALJ's credibility analysis on two points. First, Plaintiff asserts that the ALJ failed to offer specific inconsistencies between Plaintiff's testimony and the record. Second, Plaintiff asserts that the ALJ neglected to consider the degree to which her symptoms would affect her ability to work.

An ALJ is required to consider the following factors when considering a claimant's subjective complaints of pain: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the dosage, effectiveness and side effects of medication; (4) precipitating and aggravating factors; and (5) any functional restrictions. *McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see also* 20 C.F.R. §§ 404.1529, 416.929 (listing these factors and more). An ALJ is not required to methodically discuss each factor but must acknowledge and consider them before discounting the claimant's subjective complaints. *McDade*, 720 F.3d at 998. A reviewing court will defer to the ALJ's credibility determinations when supported by good reasons in the record. *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

The ALJ properly discounted Plaintiff's credibility based on the evidence in the record. The ALJ examined the record and cited the specific elements that formed the

basis of his credibility determination. These elements are consistent with the *Polaski* factors and those set out in 20 C.F.R. § 404.1529 and § 416.919. Specifically, the ALJ pointed out inconsistencies relating to Plaintiff's daily activities, clinical findings on examination, and medication side-effects.

First, with respect to Plaintiff's testimony, the ALJ found that Plaintiff is "more active and capable than alleged." (Tr. 52.) The ALJ noted three specific inconsistencies as to Plaintiff's physical ability. In September 2014, Plaintiff reported going to a bar to watch a friend play sand volleyball. (Tr. 52, 699.) In July 2015, Plaintiff reported that she "continue[s] to behaviorally activate herself and gets up every morning and engages in activities, including mowing her mother's lawn." (Tr. 52, 789.) And in May 2016, Plaintiff reported an increased level of activity, including getting "more things done around her home," "enjoying staying at her seasonal camper," and "planting flowers." (Tr. 52, 845.) In addition, as to Plaintiff's mental capabilities, the ALJ noted her ability to live alone, drive, maintain personal grooming, and maintain a relationship as evidence of basic cognitive abilities, which he found to be consistent with only moderate impairment in the "paragraph B" criteria. (Tr. 45.) Contrary to Plaintiff's assertion that the ALJ gave no consideration to Plaintiff's fatigue or capacity for sustained effort, (Doc. No. 22, Pl.'s R. re Mot. Summ. J., 6), these examples show repeated activities that the ALJ could reasonably find inconsistent with Plaintiff's stated inability to perform basic daily tasks.

Second, the ALJ considered clinical findings that indicated some inconsistency with complaints of disabling pain. Plaintiff's physical examination with Dr. Brian Allen

in January 2015 showed her to have normal motor strength in all extremities and grip strength in both hands. (Tr. 51, 671–72.) Even more notably, despite a finding in March 2016 by Dr. Davis, Plaintiff's rheumatologist, that Plaintiff's arthritis remained "persistently active," an ultrasound assessment of the disease activity in September 2016 revealed only "mild" gray-scale synovitis in her hand joints and "some synovitis and effusion" in foot joints. (Tr. 51, 832, 879.) This led Dr. Davis to opine that the "overall degree of disease activity seems to be out of proportion to the degree of pain which may suggest alternative explanations for the severity of pain." (Tr. 51, 879.) The ALJ also noted the clinical findings of Plaintiff's treating providers who found her cognitive abilities to be consistently intact: Plaintiff had appropriate grooming, linear and goal-directed thought processes, grossly intact cognition, and ability to engage in appropriate conversation. (Tr. 45, 762–63, 766–67, 788–89, 797, 801, 805, 830, 847, 874, 895.)

Third, the ALJ considered Plaintiff's statement that her memory is "horrible." Although Plaintiff claimed this was a side-effect of her medications, the ALJ discounted her testimony because the record "fails to show that the claimant addressed this concern with any medical provider." (Tr. 53.) Although an ALJ may not "disregard" an individual's statements about the intensity, persistence, and limiting effects of symptoms "solely because the objective medical evidence does not substantiate" the degree alleged, negative findings or lack of support is a permissible factor to consider. SSR 16-3p, 2017 WL 5180304, at *5 (Oct. 25, 2017).

The ALJ thus pointed out several inconsistencies between the record and Plaintiff's testimony with respect to her physical and mental abilities. "We have held that acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001)); *see also Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain."). Plaintiff's ability to plant flowers, mow, and undertake activities outside of the house was a valid reason to partially discount Plaintiff's complaints of disabling impairments. Plaintiff's ability to live alone, drive, maintain relationships, and interact with her medical providers was a valid reason to discount her testimony as to her mental abilities.

Furthermore, the ALJ did not entirely disregard Plaintiff's complaints. He considered her testimony that daily activities are "extremely" difficult for her, and that she has difficulty showering and doing chores, has panic attacks and migraines, and requires the use of a cane. (Tr. 46–47.) He reflected these in Plaintiff's RFC, limiting her to light work that involved no more than simple, routine tasks and occasional interactions with others. (Tr. 46.)

In reviewing the ALJ's credibility assessment, we do not consider whether this Court would have come to a different conclusion in the first instance. "We 'will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a

32

claimant's complaints of disabling pain.'" *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (quoting *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005)). The above reasons were sufficient to partially discount Plaintiff's credibility, consistent with *Polaksi*.

As for Plaintiff's claim that the ALJ "never undertook" step two of the assessment for subjective complaints of pain pursuant to SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017), this claim is without merit. The ALJ clearly indicated that he was following the "two-step process" required. (Tr. 46.) The ALJ found at step one that Plaintiff's medically determinable impairments "could reasonably be expected" to cause her symptoms. (Tr. 47.) The ALJ then undertook step two and found that Plaintiff's symptoms limited her to performing "light work" under the conditions of her RFC in light of the evidence in the record relating to her medical and psychological impairments. (Tr. 46.)

## ORDER

Based on the foregoing, and all the files, records, and submissions herein, **IT IS HEREBY ORDERED** that:

1.      Plaintiff's Motion for Summary Judgment (Doc. No. 18) is **DENIED**;

2.      Defendant's Motion for Summary Judgment (Doc. No. 20) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: February 12, 2019                    *s/ Becky R. Thorson*_____
                                           BECKY R. THORSON
                                           United States Magistrate Judge